**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAULIE CANTAVE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAINT JOSEPH'S UNIVERSITY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jaulie Cantave ("Plaintiff"), by and through her undersigned counsel, bring this Class Action Complaint against Defendant, Saint Joseph's University ("SJU" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2. Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities and experiences through an on-campus, in-person educational experience.

3. SJU offers students the option to pick either (1) online degree programs, or (2) an on-campus, in-person educational experience in Philadelphia, Pennsylvania.

4. Plaintiff, an undergraduate student during the Spring 2020 semester, paid tuition to

1

enroll in SJU's on-campus, in-person education program, including all the benefits and services associated therewith for the entirety of the semester.

5. Plaintiff's paid-for experience was cut short mid-way through the spring of 2020, when that in-person educational experience was taken away from Plaintiff and other students at SJU for the remaining duration of the Spring 2020 semester.

6. In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), SJU, like many other universities, transitioned to remote online-only education, canceled on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

7. As a result, the on-campus educational experience for which students paid for, was no longer available to SJU students for the remainder of the Spring 2020 semester.

8. Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, SJU refused to provide a pro-rated refund of tuition tied to an on-campus educational experience that was not available to students for a significant part of the Spring 2020 semester.

9. Accordingly, SJU's students lost the benefits of the bargain for services and the experience they paid for but could no longer access or use following the school's transition to remote learning in March 2020.

10. By not giving prorated refunds for tuition charged for on-campus education and services not provided, SJU breached its contracts with students or was otherwise unjustly enriched.

11. It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition for online-only education and services.

12. It is unfair and unlawful for SJU to retain tuition for campus-based in-person education and services not being provided and to pass the financial losses on to its students.

13. Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Defendant's decision to retain the tuition, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such.

14. Plaintiff brings this class action for damages and restitution, resulting from SJU's retention of the tuition paid by Plaintiff and the other putative Class Members for in-person education and services not being provided. Specifically, this lawsuit seeks a partial pro-rated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

## PARTIES

15. Plaintiff, Julie Cantave, is an adult, who at all relevant times, is a resident and citizen of the State of [insert]. She paid tuition and fees for the Spring 2020 semester. She paid tuition for the Spring 2020 semester. Less than halfway through the Spring 2020 semester, Plaintiff was forced to take her classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which she paid.

16. Plaintiff was an undergraduate student enrolled at SJU for the Spring 2020 semester, which was scheduled to run from approximately January 13, 2020 to May 7, 2020. Plaintiff did not have access to the campus after March 18, 2020 because the campus was closed due to the COVID-19 pandemic. Plaintiff paid tuition for an in-person educational experience during the Spring 2020 semester, the benefits of which she lost because SJU closed the campus

and cut off access to the library, computer and science laboratories, recreational facilities, extracurricular activities, and other on-campus services, facilities, and events.

17. Defendant Saint Joseph's University, is a private university founded in 1851. SJU offers over fifty undergraduate majors and a similar number of graduate degree programs, and enrolls students from nearly every state in the country as well as dozens of foreign countries. SJU's principal campus ("Hawk Hill") is located at 5600 City Avenue in Philadelphia, Philadelphia County, Pennsylvania. Defendant is a citizen of Pennsylvania.

## JURISDICTION AND VENUE

18. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19. This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District and soliciting students residing in this District to attend its institution.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

**FACTUAL ALLEGATIONS**

21. Prior to the COVID-19 pandemic, SJU had a longstanding tradition of offering most of its courses in face-to-face classroom settings on campus. In accordance with this prior course of conduct, SJU scheduled the majority of its Spring 2020 courses to be in-person and on-campus.[1] SJU also offered students the option to take some courses in an online-only format.

22. Indeed, a review of SJU's academic offerings for the 2019-2020 school year on its website demonstrates that while SJU offered students the option between traditional in-person, on campus educational programs and online educational programs, SJU offered a vast majority of its educational programs in-person, on-campus. Specifically, SJU offered four types of degree programs: undergraduate, graduate, adult, and online.[2] Notably, however, SJU's online offerings were limited to a small number of bachelor's and adult learning degrees, master's degrees, and certificate programs.[3]

23. To enroll in classes, SJU students are required to pay tuition. The Spring 2020 semester was scheduled to commence on or about January 13, 2020, and end on or around May 7, 2020.[4]

---

[1] *See generally*, *Registration*, Saint Joseph's University, https://registration.sju.edu/StudentRegistrationSsb/ssb/term/termSelection?mode=search (last visited Aug. 16, 2023).

[2] *Academics*, Saint Joseph's University, https://web.archive.org/web/20191221221331/https://www.sju.edu/academics (captured Dec. 21, 2019).

[3] *Online Learning*, Saint Joseph's University https://web.archive.org/web/20191221221246/https://www.sju.edu/online-learning (captured Dec. 21, 2019).

[4] *Academic Calendar*, Saint Joseph's University, https://www.sju.edu/events/academic-calendar (last visited Aug. 14, 2023).

24. To assist students when they registered for Spring 2020 courses, SJU used the special section naming code "OL" to flag classes that offered online instruction only.[5] SJU's online course registration site also allowed students to filter courses by instructional methods, *i.e.*, face-to-face, synchronous online, asynchronous online, or hybrid methods.[6] Therefore, when enrolling in Spring 2020 semester classes, SJU students made informed choices about whether to spend their tuition dollars on in-person or online modes of course delivery.

25. As described above SJU students could elect to take courses in on-campus, in-person degree programs or through degree programs offered specifically to online learners. For Spring 2020, tuition for in-person undergraduate programs cost $23,175 for students taking up to 17 credits, and $1,544 per credit beyond 17 credits. In contrast, tuition for online learners was far cheaper and cost only $584 per credit, or $9,928 for 17 credits.[7]

26. In-person students who registered for Spring 2020 courses with a laboratory or studio component—including courses in art, communications, sciences, music, theater, film, and foreign languages—were charged additional course-specific fees, ranging from $115 to $250 depending on the course, for the use of the specified studio or laboratory resources.[8] Online learners were not charged similar fees.[9]

---

[5] *Academic Catalog 2019-2020* ("Catalog"), Saint Joseph's University, https://sites.sju.edu/registrar/files/2020/10/2019-2020-Catalog.pdf, at 8-9.
[6] *See generally Registration*, Saint Joseph's University https://registration.sju.edu/StudentRegistrationSsb/ssb/term/termSelection?mode=search (last visited Aug. 16, 2023).
[7] *Tuition & Fees*, Saint Joseph's University, https://web.archive.org/web/20191221221246/https://www.sju.edu/tuition-fees (captured Dec. 31, 2019).
[8] *Id.*
[9] *Id.*

27. SJU uses its marketing materials, course catalog, and other bulletins to highlight to prospective students the benefits of enrolling in its on-campus, in-person educational programs.

28. For example, SJU's website recognizes that "Living away from home for the first time is an education in itself. That's why we require first- and second-year resident students to live on campus."[10]

29. SJU also used its website to highlight the benefits of its on-campus community: "The vibrant and dynamic community on Hawk Hill offers students opportunities to engage and grow intellectually, socially, physically, ethically and spiritually. Jesuit, Catholic values foster a supportive and respectful environment that challenges students to build lifelong relationships, explore new perspectives, and become engaged citizens."[11]

30. SJU promoted its academic programs to prospective 2019-2020 students in a YouTube video, in which one faculty member stated that SJU distinguished itself by students' "access to a very caring faculty" and another faculty member stated that her "interest in St. Joe's really started with the ability to interact with students."[12]

31. SJU offers extracurricular clubs and activities as a significant benefit of enrollment in on-campus courses. In promoting on-campus clubs and activities, intramural and club sports, campus ministry activities, and service opportunities, SJU tells prospective students that "[w]hat

---

[10] *Housing & Dinning*, Saint Joseph's University, https://web.archive.org/web/20191221221246/https://www.sju.edu/housing-dining (captured Dec. 31, 2019).
[11] *About SJU*, Saint Joseph's University https://web.archive.org/web/20190331175049/https://www.sju.edu/about-sju (captured Mar. 31, 2019)
[12] Saint Joseph's University, *Why I Chose Saint Joseph's University – Admitted Students Day 2019*, YouTube (Apr. 11, 2019), https://www.youtube.com/watch?v=U89xyda-qvU, at 1:08-1:33.

7

Hawks do outside of class is as integral to the Saint Joseph's experience as the time they spend hitting the books."[13]

32. SJU promotes the Post Academic Center and the Frances A. Drexel Library as significant academic resources for undergraduate students enrolled in Defendant's on-campus educational programs. SJU explains that "[t]he Library strives to create environments conducive to quiet study, purposeful research, and thoughtful exchange of ideas."[14] These environments include reservable individual study spaces and group meeting rooms, 24-hour building access for students studying for finals, and research and technology support.

33. Further, SJU offers a range of in-person support facilities and services as a significant benefit of enrollment in its on-campus undergraduate programs. These services include:

    a. The Success Center, where SJU advertises that students can "[d]rop in for a range of services, including peer tutoring, group study sessions and specialized support for first-generation scholars, commuters, transfer students and student-athletes;"[15]

    b. The Writing Center, where SJU offers "one-on-one coaching sessions . . . designed to help you get what's in your head down on paper;"[16] and

---

[13] *Clubs & Activities*, Saint Joseph's University, https://web.archive.org/web/20191221221246/https://www.sju.edu/clubs-activities (captured Dec. 21, 2019).

[14] *Post Learning Commons and Drexel Library*, Saint Joseph's University, https://web.archive.org/web/20190718190433/https://sites.sju.edu/library/ (captured Jul. 18, 2019).

[15] *Support & Advising*, Saint Joseph's University, https://web.archive.org/web/20191221221246/https://www.sju.edu/support-advising (captured Dec. 21, 2019).

[16] *Id.*

      c.      Several topic-specific research centers, where SJU promises students can "complement your classroom studies with exciting opportunities for hands-on learning led by experts in their fields."[17]

34.    Moreover, in advertising and soliciting students to attend the university, SJU stresses its location in Philadelphia as a core benefit of enrollment in its on-campus educational programs:

    a.    "We're located in Philadelphia, and downtown, with its vast cultural and professional opportunities, is a short train ride from campus. Whether you're interning at a high-profile company, catching a show at the famed Walnut Street Theatre or chowing down at Reading Terminal Market, exploring the city is a favorite pastime of many Hawks;"[18]

    b.    "Saint Joseph's one hundred and fourteen acre campus combines accessibility to the city with the proximity to the Main Line. In this urban-suburban environment, students share in the educational, cultural, and entertainment resources of a great metropolitan area;"[19] and

    c.    "Here on campus, which spans West Philadelphia and Lower Merion, there are also a wide range of partnerships and experiential learning opportunities available — like the Kinney Center for Autism Education and Support, the renowned Barnes Arboretum at Saint Joseph's University or the local biotech startup that found a home on Hawk Hill."[20]

---

[17] *Centers & Institutes*, Saint Joseph's University (Dec. 21, 2019), https://web.archive.org/web/20191221221247 /https://www.sju.edu/centers-institutes
[18] *Campus Community*, Saint Joseph's University https://web.archive.org/web/20191221221246/https://www.sju.edu/campus-community (captured Dec. 21, 2019).
[19] Catalog, *supra* note 5 at 5.
[20] *Location*, Saint Joseph's University, https://web.archive.org/web/20191221221325/https://www.sju.edu/location (captured Dec. 21, 2019).

9

35. Similarly, SJU's website features an entire page touting the benefits of attending college in Philadelphia, including the city's history, career opportunities, museums and attractions, music and performing arts, outdoor activities, sports, transportation, and restaurants.[21]

36. Plaintiff and members of the Class paid their tuition in the Spring 2020 semester to enjoy everything SJU offered them, including on-campus resources, campus community, and in-person education throughout the entire Spring 2020 semester.

37. When enrolling in classes for Spring 2020, Plaintiff and members of the Class chose to enroll in classes offered in-person, to obtain the benefits outlined above.

38. Despite Plaintiff and Class members paying Spring 2020 semester tuition to attend an in-person educational experience, SJU failed to provide the promised in-person education for the duration of the entire semester, instead providing only online instruction for the majority of the Spring 2020 semester.

A. **In Response to COVID-19, SJU Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes.**

39. In or around the first week of March 2020, members of the SJU administration began preparing a response to the emerging COVID-19 pandemic. SJU's spring break was scheduled to begin on Monday, March 9, 2020, with students returning to class on Thursday, March 19, 2020.[22]

40. On or before March 10, 2020, SJU's administration required its faculty to develop "instructional continuity plans" to address the possibility that some or all SJU students would require accommodations for fully remote learning after spring break. As part of this contingency

---

[21] *SJU & Philadelphia*, Saint Joseph's University, https://web.archive.org/web/20190331174228/https://www.sju.edu/sju-philadelphia (captured Mar. 31, 2019).
[22] *Academic Calendar*, Saint Joseph's University, https://www.sju.edu/events/academic-calendar (last visited Aug. 16, 2023).

plan, SJU announced a full scale "electronic course test," in which all university classes would be taught online-only on Thursday, March 19, and Friday, March 20.[23]

41. On March 18, 2020, SJU cancelled all in-person instruction for the remainder of the Spring 2020 semester, cancelled all on-campus events "until further notice," and requested all students to move out of university housing.[24] By March 20, 2020, SJU closed physical access to the library, learning commons, and recreational facilities.[25] The campus remained closed for the rest of the Spring 2020 semester.

42. As a result of the decisions described above, all SJU Spring 2020 semester classes after March 6, 2020 were only offered in a remote online format with no in-person instruction or interaction.

43. Although SJU provided pro-rated refunds for residence hall rooms, dining hall plans, and student activity fees,[26] SJU refused to adjust its tuition policies, including its policies governing tuition refunds. Under those policies, the shift to exclusive remote online instruction occurred after SJU's deadline for students to receive *any* tuition refund for Spring 2020 semester enrollment by withdrawing from courses.[27]

---

[23] *Instructional Continuity Plans Due March 16; Readiness Testing March 19 and 20*, Saint Joseph's University (Mar. 10, 2020), https://www.sju.edu/hawk-hill-ahead/announcements/march-10-instructional-continuity.

[24] *A Message From the President: Update on Spring Semester*, Saint Joseph's University (Mar. 18, 2020), https://www.sju.edu/hawk-hill-ahead/announcements/march-18-update-spring-semester.

[25] *Updates for Faculty and Staff*, Saint Joseph's University (Mar. 20, 2020), https://www.sju.edu/hawk-hill-ahead/announcements/march-20-update-faculty-staff.

[26] *Reimbursements to Student Accounts*, Saint Joseph's University (Apr. 15, 2020), https://www.sju.edu/hawk-hill-ahead/announcements/april-15-update-students-parents.

[27] *Financial Aid Policies, Refunds, and Forms,* Saint Joseph's University, https://web.archive.org/web/20200811194246/https://www.sju.edu/financial-aid/policies-refunds-and-forms (captured Aug. 11, 2020) (no refund for withdrawals beyond the fifth week of a 16-week semester course, approximately Feb. 14, 2020)

**B.** **Students Experienced Significant Losses, in Many Cases of Borrowed Funds as a Result of SJU's Conduct.**

44. At SJU, the median federal loan debt among borrowers who completed their undergraduate degree is $25,000.[28] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for student federal loan borrowers who graduated from SJU is $250.[29]

45. In addition, 22% of graduating students at SJU took out private loans.[30] Students with private loans had an average of $59,629 in private loan debt at graduation.[31]

46. With the campus shut down for more than half of the semester, Plaintiff and the proposed Class were deprived of the benefits of the on-campus educational experience as set forth above. Nevertheless, SJU has refused to refund any portion of the tuition, despite not providing the in-person educational experience for which students paid.

47. Students attending SJU's Spring 2020 semester did not choose to attend an online institution of higher learning, but instead chose to enroll in SJU's in-person, on campus educational program.

48. During the online portion of the Spring 2020 semester, SJU principally used programs by which previously recorded lectures were posted online for students to view on their own, or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction between students and professors and among students that is instrumental in interpersonal skill development.

---

[28] *Saint Joseph's University Tuition and Financial Aid*, U.S. News, https://www.usnews.com/best-colleges/saint-josephs-university-pennsylvania-3367/paying (last visited Aug. 14, 2023).
[29] *Id.*
[30] *Id.*
[31] *Id.*

12

49. The online formats used by SJU did not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

50. Students were deprived of the opportunity for hands-on, collaborative learning and in-person dialogue, feedback, and critique.

51. Access to facilities such as libraries, laboratories, computer labs, and study rooms, integral to a university education, and access to the myriad activities offered by campus life that foster social development, leadership, wellness, independence, and networking for future careers, are all substantial and material parts of the basis upon which SJU can charge the tuition it charges. Contrary to SJU's promises, these services and facilities were not provided.

52. SJU has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the Spring 2020 semester for the period it moved to online distance learning.

53. Plaintiff and the proposed Class are therefore entitled to a pro-rata refund of the tuition they paid SJU for the Spring 2020 semester for the remaining days of that semester after class moved from in-person to online and facilities were closed.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All Saint Joseph's University undergraduate students who satisfied their payment obligations for the Spring Semester 2020 tuition and enrolled in at least one in-person, on-campus class (the "Class").

55. Specifically excluded from the Class are all undergraduate students who received full SJU-funded scholarships for the Spring 2020 semester, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,

principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

56. Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definitions.

57. **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, SJU reported thousands undergraduate students enrolled for the 2019-2020 school year. The names and addresses of all such students are known to SJU and can be identified through SJU's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

58. **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

    a. Whether SJU accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus educational experience, as well as certain facilities and services throughout the Spring 2020 semester;

    b. Whether SJU breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus educational experience after March 6, 2020;

    c. Whether SJU breached its contracts with Plaintiff and the Class by transitioning to remote education after mid-March 2020;

    d.    Whether SJU was unjustly enriched by retaining a portion of the tuition during the period of time SJU was closed during the Spring 2020 semester, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience; and

    e.    Whether SJU intentionally interfered with the rights of the Plaintiff and the Class when it moved all in-person classes to remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services, all while retaining the tuition paid by Plaintiff and the Class; and

    f.    The amount of damages and other relief to be awarded to Plaintiff and the Class members.

59.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus educational experience for the tuition they paid, that SJU stopped providing for the remainder of the Spring 2020 semester.

60.    **Adequacy of Representation:** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members whom she seeks to represent; Plaintiff has retained competent counsel who are experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

61.    **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both

quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class members, then Plaintiff and each Class member suffered damages by that conduct.

62. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members is relatively small compared to the burden and expense that would be required to individually litigate their claims against SJU, making it impracticable for Class Members to individually seek redress for SJU's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

63. **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class members may be readily identified through Defendant's books and records.

## FIRST CLAIM FOR RELIEF
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

64. Plaintiff repeats and re-allege the factual allegations above, as if fully alleged herein.

65. Plaintiff brings this claim individually and on behalf of the members of the Class.

66. When Plaintiff and Class members paid SJU tuition for the Spring 2020 semester, SJU agreed to, among other things, provide an in-person and on-campus educational experience. As a result, Plaintiff and each member of the Class entered into binding implied contracts with SJU.

67. When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that SJU would provide them with an on-campus and in-person educational experience, as opposed to remote learning, and use of Defendant's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with Defendant's publications, including but not limited to, its marketing materials, course catalogues, and other bulletins, as well as SJU's history and prior course of providing in-person and on-campus education.

68. Plaintiff and Class members fully performed their obligations under their implied contracts with SJU by registering for classes and paying tuition.

69. Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on one hand, and SJU on the other.

70. SJU breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational experience throughout the Spring 2020 semester yet has retained monies paid by Plaintiff and the Class for an on-campus and in-person educational experience during the entire Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

71. Plaintiff and the members of the Class have suffered damages as a direct and proximate result of SJU's breach in the amount of the prorated portion of the they each paid equal

to the reduction in contracted for education and services during the portion of time the Spring 2020 semester when SJU discontinued in-person classes and closed campus facilities.

72. SJU should return such portions of the tuition to Plaintiff and each Class Member.

## SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

73. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

74. Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent that it is determined that Plaintiff and the Class do not have an enforceable contract with SJU regarding the relief requested.

75. Plaintiff and members of the Class conferred a benefit on SJU in the form of tuition paid for the Spring 2020 semester. The payment of this tuition was to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiff and the members of the Class throughout the Spring 2020 semester.

76. SJU knowingly accepted the benefits conferred upon it by Plaintiff and Class members.

77. SJU has retained the full benefit of the tuition payments made by Plaintiff and the members of the Class for the Spring 2020 semester—without providing the benefits that Plaintiff and Class members were owed.

78. For example, SJU failed to provide Plaintiff and Class Members access to many on-campus academic facilities and services after mid-March 2020, yet SJU assessed Plaintiff and Class Members with tuition that covered the cost of upkeep and maintenance of such facilities and services.

79. Indeed, as a result of closing campus and moving classes online, SJU saved significant sums of money in the way of reduced utility costs, reduced staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work-study students, and otherwise.

80. The costs incurred for having an online only program are significantly lower than the overhead needed to provide classes and services on campus.

81. As a result of SJU's retention of all the tuition paid by Plaintiff and members of the Class during the period of time SJU was closed, Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access to on-campus academic services and facilities. This was unjust and inequitable under the circumstances.

82. Allowing SJU to retain the full benefit of tuition paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by SJU, unjustly enriched the Defendant.

83. Accordingly, SJU has been unjustly enriched and should return the prorated portion of the tuition that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the remainder of the Spring 2020 semester when SJU discontinued in-person classes and closed academic facilities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) For compensatory damages in an amount to be determined by the trier of fact;

(d) For an order of restitution and all other forms of equitable monetary relief;

(e) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f) Awarding pre- and post-judgment interest on any amounts awarded; and,

(g) Awarding such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

A jury trial is demanded on all claims so triable.

Dated: August 17, 2023

Respectfully submitted,

/s/ *Gary F. Lynch*

Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com