IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Cantave**<br>*Individually and on behalf of all others similarly situated,*<br>                                    Plaintiff,<br><br>v.<br><br>**Saint Joseph's University,**<br>                                    Defendant. | **CIVIL ACTION**<br><br>**NO. 23-3181** |

### MEMORANDUM RE: FINAL CLASS SETTLEMENT APPROVAL & FEES

**Baylson, J.**                                                                              **November 18, 2024**

### I.   BACKGROUND

Plaintiff Jaulie Cantave brings this putative class action alleging that Defendant, Saint Joseph's University (SJU), breached an implied-in-fact contract and was unjustly enriched when it transitioned to a remote format during the Covid-19 pandemic. Compl. ¶ 10, ECF 1. Plaintiffs seeks to recover tuition for the remote portion of the Spring 2020 semester. Id. ¶¶ 72, 83. The parties have entered a Class Action Settlement Agreement pursuant to which Defendant will pay $1,153,880.00 in a non-reversionary cash payment to resolve this action (the "Settlement Agreement"). Settlement Agreement at 10, ECF 29-1. Plaintiffs request that attorneys' fees, litigation costs, including fees and expenses for the Settlement Administrator, and a case Contribution Award to named Plaintiff be deducted from the Settlement Amount. Id.

On June 10, 2024, the Court entered an Order granting preliminary approval of the Class Action Settlement, conditionally certifying the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), appointing the class representative, appointing class counsel, and approving the proposed notice plan ("Preliminary Approval Order"). Preliminary Approval Order, ECF 24. The Settlement Class is defined as:

1

> All undergraduate students enrolled at SJU who satisfied their tuition payment obligation and attended at least one in-person class on campus during the Spring 2020 semester but had their class(es) moved to online learning.
>
> Excluded from the Settlement Class is: (i) any person who withdrew from SJU on or before March 19, 2020; (ii) any person enrolled for the Spring 2020 semester solely in a program that was originally delivered as an online program without regard to any changes in modality resulting from the COVID-19 pandemic; or (iii) any person who received Financial Aid equal to or exceeding the applicable tuition for the Spring 2020 Semester.

The Court held a final approval hearing on October 30, 2024, giving the parties an opportunity to be heard. No settlement class members objected to the Settlement and no settlement class members opted out of the Settlement.

## II.   **STANDARD**

The Third Circuit has held that a presumption of fairness attaches to a proposed settlement if "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 436 (3d Cir. 2016). However, final approval of a class action settlement is within the district court's discretion. Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995). A district court may only approve a settlement "if the compromise is 'fair, adequate, and reasonable.'" Id. (quoting Walsh v. Great Atl. & Pac. Tea Co., Inc., 726 F.2d 956, 965 (3d Cir. 1983)). In Girsh v. Jepson, the Third Circuit articulated nine factors that a district court should weigh in evaluating the fairness of a class settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in

2

light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.
521 F.2d, 153, 157 (3d Cir. 1975).

In addition to the Girsh factors, the Third Circuit also explained that the Prudential considerations should be evaluated in determining whether to provide final approval to a class settlement:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; (6) and whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998).  However, "[u]nlike the Girsh factors, each of which the district court must consider before approving a class settlement, the Prudential considerations are just that, prudential.  They are permissive and nonexhaustive."  In re Baby Prods. Antitrust Litig., 708 F.3d 163, 174 (3d Cir. 2013).  Lastly, in Baby Products, the Third Circuit articulated an "additional inquir[y]" that bears on the evaluation of a proposed settlement: "the degree of direct benefit provided to the class."  708 F.3d at 174.  In conducting this inquiry,

> a district court may consider, among other things, the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards.  Id.

### III. DISCUSSION

As noted above, final approval of the Settlement Agreement is within the Court's discretion. Eichenholtz, 52 F.3d at 482.  The Court has previously rejected a final settlement agreement in

3

Ward v. Flagship Credit Acceptance LLC, WL 759389 (E.D. Pa. Feb. 13, 2020) (Baylson). However, there are slight, yet significant differences between the settlement agreement in Ward and the Settlement Agreement in this case. In Ward, the decision to deny the settlement agreement was in large part due to (1) the lack of information available to counsel to inform their view and advise the class of the strengths and weaknesses of the case given the early posture in which the parties reached agreement, and (2) skepticism that $4 million was a fair amount, given that it would result in $35.30 recovery per class member. Id. at *23. While this case has also reached an early resolution, as class counsel argued at the final approval hearing, they have litigated several of these cases across the country. The Court finds that counsels' experience with cases involving substantially similar facts allowed counsel to adequately advise the class of the strengths and weaknesses of the case. However, the early stage at which the case was resolved is still a significant factor in determining the reasonableness of the settlement and award of fees. Additionally, the per member recovery under the Settlement Agreement will be $277 per student.

### A. Motion for Final Approval of the Settlement Agreement

In weighing the requirements of Federal Rule of Civil Procedure 23, the Girsh factors, and the Prudential and Baby Product Considerations, the Court finds that the Settlement Agreement is fair, adequate, and reasonable. Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), the Court now gives final approval to the Settlement Agreement.

#### 1. Federal Rule of Civil Procedure 23

First, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), the Court finds that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Settlement Class, and those questions predominate over any individual questions; (c) the claims of named Plaintiff are typical of the claims of the

Settlement Class; (d) class counsel and named Plaintiff fairly and adequately represented the interests of the Settlement Class; and (e) a class action is superior to other available methods to fairly and efficiently adjudicate the controversy.

Second, now that the Notice Plan has been implemented, the Court concludes that the notice provided to the Settlement Class – including the required description of the material Settlement terms, the deadline for Settlement Class Members to opt out of the Settlement Class, the deadline for Settlement Class Members to object to the Settlement, and the Settlement Website at which Settlement Class Members could access the Long Form Notice, Settlement Agreement, and other related documents and information – complied with the requirements of Federal Rule of Civil Procedure 23(c)(2) and was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the final approval hearing.

Third, after consideration of the factors in Federal Rule of Civil Procedure 23(e)(2), the Court finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class. The Class Representative and Class Counsel adequately represented the Settlement Class for the purposes of litigating this matter and entering into and implementing the Settlement Agreement. The Settlement Agreement was the product of arms' length negotiations between the parties, and the settlement amount is reasonable, considering the novel legal issues raised by COVID-19 disruptions, particularly whether impossibility or impracticability are valid defenses[1], and the potential risks and likelihood of success in pursuing litigation on the merits.

---

[1] In Hickey v. Univ. of Pittsburgh, 81 F.4th 301, 313 (3d Cir. 2023), the Third Circuit reversed the decision of two district courts to dismiss breach of contract claims brought by student class actions seeking tuition reimbursement due to Covid-19. In reversing, the Third Circuit noted that "[w]hether it was impossible or impracticable for the Universities to continue holding in-person instruction during the second half of the Spring 2020 semester may speak

Accordingly, the Court confirms as final its approval of the Settlement Agreement as stated in the Preliminary Approval Order.  Preliminary Approval Order ¶¶ 4, 6.

### 2. Girsh Factors

The Girsh factors favor approval of the Settlement Agreement.

Factor one, the complexity, expense, and likely duration of litigation, favors approval of the Settlement Agreement because this case involves complex and novel legal questions.  All parties benefit by avoiding lengthy litigation, particularly the class who will receive immediate benefits rather than wait years for a potential recovery.

Factor two, the reaction to the class settlement, also favors approval of the Settlement Agreement as there have been no opt-outs or objections.

Factor three, the stage of proceedings and amount of discovery completed, weighs against the Settlement Agreement's approval because only limited discovery with a lens towards settlement has occurred, notably no depositions were taken.  However, as discussed above, class counsel's experience with similar cases allowed them to objectively evaluate the strengths and weaknesses of the case.

Factors four and five, the risks of establishing liability and damages, favor approval of the Settlement Agreement because the case raises complex and novel questions of law.

---

to an impossibility defense . . ." See also Ninivaggi v. Univ. of Delaware, 555 F.Supp.3d 44, 52-53 (the Court determined that the students breach of contract and unjust enrichment claims survived the motion to dismiss but noted that the university had a strong impossibility defense and that the students were most likely to succeed on unjust enrichment); Dixon v. Lincoln Univ., WL 4156837 at *5 (E.D. Pa. Sep. 10, 2024) (Marston) (allowing students' breach of contract claim to proceed but noting that "Defendant  may have a strong defense later in this litigation, [but] the Court finds that additional discovery is needed before we are able to conclude that full performance of its contractual obligations was impractical or impossible."); Nouri v. Univ. of Scranton, WL 3871804 at *7 (M.D. Pa. Aug. 19, 2024) (holding that it was premature, at the motion to dismiss stage, "to address the University's impossibility defense, as questions of fact regarding whether Plaintiff is entitled to restitution are to be addressed later in litigation."); Faw v. Villanova Univ., WL 3237601 at *7 (E.D. Pa. June 28, 2024) (Rufe) (allowing a breach of contract claim to proceed on the basis that additional discovery was needed to determine whether Covid-19 prevented the university from holding in-person classes for the entirety of the semester and because even if an impossibility defense was successful, students would still be able to recover under unjust enrichment).

Importantly, no court has yet ruled on whether impracticability or impossibility is a viable defense in the Covid-19 tuition reimbursement context.

Factor six, the risks of maintaining the action through trial, is neutral. The Court only certified the class for settlement purposes and obtaining certification for litigation purposes is a more challenging hurdle. However, "this factor becomes essentially 'toothless' [in a class settlement] because a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." Nat'l Football League, 821 F.3d at 440. Therefore, this factor deserves "only minimal consideration." Id.

Factor seven, the ability of defendants to withstand a greater judgment, is also neutral. The parties only exchanged limited discovery for mediation purposes, supplemented by class counsels' research via public financial records. Without more detailed financial information, the Court cannot make a determination as to whether SJU could withstand a greater judgment.

Factors eight and nine, the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation, favor the Settlement Agreement's approval because Covid-19 tuition reimbursement cases are a novel area of law with limited precedent, making the risks of litigation significant.

On balance, the Girsh factors favor approval of the Settlement Agreement.

### 3. Prudential Considerations

Taken together, the Prudential considerations favor approval of the Settlement Agreement. Factors two (probable outcome of claims by other classes), three (results achieved for the class compared to other claimants), four (right of class members to opt-out), and six (whether the procedure for processing individual claims is fair and reasonable) all favor approval of the Settlement Agreement. No Class Members have opted-out or objected, despite being afforded

the opportunity, other Covid-19 tuition cases have settled for similar amounts, and each Class Member will automatically receive their settlement benefit without the need to take any action. Settlement Motion at 19-21, ECF 29-1.

While factors one and five weigh against approval of the Settlement Agreement, this is not dispositive. As already discussed, factor one, the maturity of the underlying substantive issues, tends to weigh against approval of the Settlement Agreement because the case is still in the early stages of litigation. However, given class counsel's experience litigating Covid-19 tuition reimbursement cases, the Court finds that they were adequately able to assess the merits of the case. Additionally, and as will be discussed in more detail below, the Court finds that the requested attorneys' fees are not reasonable given the limited discovery and motions practice in this case.

As such, the Prudential considerations weigh in favor of approving the Settlement Agreement.

### 4. Baby Products Considerations

Factor one, the number of individual awards compared to the number of claims and estimated class members, is not relevant because all identified Class Members will receive an award. See In re Suboxone Antitrust Litig., WL 815503 at * 11 (E.D. Pa. Feb 27, 2024) (Goldberg) (quoting Ward, WL 7599389 at *22 ("the number of individual awards is not relevant where, as here, 'each class member who submit[s] a valid claim is eligible to receive an individual award.'")).

Factor two, the size of the individual awards compared to claimants' estimated damages, disfavors approval of the Settlement Agreement. The $277 individual awards are de minimis

compared to the $23,175 cost of SJU's Spring 2020 tuition, before any financial aid or scholarships.  Settlement Motion at 19.

Factor three, the claims process used to determine individual awards, is fair, providing a pro rata share of the Settlement to all Class Members based on the amount of tuition they actually paid, and thus favors approval of the Settlement Agreement.  Settlement Motion at 4.

In sum, the Baby Products considerations are neutral.

### B. Motion for Attorneys' Fees, Costs, and Contribution Award

To start, the Court approves the request for a $2,500 Contribution Award for named Plaintiff.  Motion for Fees at 2, ECF 25-1.  The Court will rule on the requested litigation expenses by a subsequent order.  Id.

The Court finds that the request for $384,588.20 in attorneys' fees, representing 33.3% of the settlement fund and a lodestar multiplier of 3.07 is unreasonable.  Id.  Counsels' billing rates ranged from $200 an hour for paralegals to $1,100 an hour for senior attorneys.  Colella Decl. at 3, ECF 25-2; Alesandro Decl. at 5, ECF 25-3.  In total, counsel recorded $128,487.50 on this matter.  Id.

The threshold question in determining an attorneys' fee award is whether to calculate the award based on the percentage-of-recovery or lodestar method.  Courts generally apply the percentage-of-recovery method in class actions involving a common fund.  Serano v. Sterling Testing Sys., Inc., 711 F.Supp.2d 402, 418 (E.D. Pa. 2010) (Pratter).  Additionally, the lodestar method can be applied to cross-check the reasonableness of the award.  In re Diet Drugs v. Am. Home Prod. Corp., 553 F.Supp.2d 442, 467 (E.D. Pa. 2008) (Bartle) ("The lodestar cross-check is just that—a check to "ensure that the proposed fee award [under the percentage of recovery method] does not result in counsel being paid a rate vastly in excess of what any lawyer

9

could reasonably charge per hour, thus avoiding a 'windfall' to lead counsel.") (internal citations omitted).

### 1. Percentage-of-Recovery

To determine what constitutes a reasonable award under the under the percentage-of-recovery method, courts consider "the <u>Gunter</u> factors, the <u>Prudential</u> factors, and any other factors that are useful and relevant with respect to the particular facts of the case. The fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" <u>In re AT&T Corp.</u>, 455 F.3d 160, 166 (3d Cir. 2006) (quoting <u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 301 (3d Cir. 2005)). <u>Gunter</u> and <u>Prudential</u> provide ten (10) factors for courts to consider:

> (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.
>
> <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190, 195 n.1 (3d Cir. 2000), <u>Prudential</u>, 148 F.3d at 283.

The Court finds, that taken together, the <u>Gunter</u> and <u>Prudential</u> factors indicate that the requested attorneys' fee is unreasonable. The following factors especially demonstrate the unreasonableness of the requested award:

Factor one, the size of the fund and the number of beneficiaries. This action is relatively modest, both in terms of the fund amount, $1,153,880, and class size, 4,165 members. Fees Motion at 2,6. For example, in <u>Ramey v. The Pennsylvania State University</u>, another Covid-19

tuition reimbursement class action, there were approximately 72,000 individuals in the settlement class and a proposed settlement amount of $17,000,000. No. 20-753, Pacer (W.D. Pa. 2020). Likewise, in In re Columbia University Tuition Refund Action, there were approximately 30,000 class members and the fund amounted to $12.5 million, consisting of $8.56 million, 100% of the University's liability for the classes alleged damages, plus an additional nearly $4 million to account for the risks of litigation, costs, fees, and awards.[2] No. 20-3208, Pacer (S.D.N.Y. 2020). By contrast, the class here is relatively small. cf In re Cell Pathways, Inc., Sec. Litig. II, WL 31528573 at *8-9 (E.D. Pa. Sep. 23, 2002) (McLaughlin) ("the settlement fund procured by the attorneys will benefit a large number of people. Identified class members number at least 35,950, and there are likely more class members who received notice through publication. The number of persons benefitted and the size of the settlement both weigh in favor of approving their fee petition."). The Court is not suggesting that the award be reduced due to the class and funds modest size, the way that awards in mega-fund cases are reduced. In re Rite Aid Corp. Sec. Litig., 396 F.3d at 302. But, in determining an awards reasonableness, courts are instructed to look at the size of the class and fund. The fact that this case is relatively modest both in terms of class members and fund amount indicates that the requested award is unreasonable.

Factor four, the complexity and duration of the litigation. It is true that this case presents emerging legal questions. However, counsel conceded at the final approval hearing that the case resolved itself at an early stage of litigation. It was just fourteen months from the filing of the Complaint to the final approval hearing and it took only eight months for the parties to reach a settlement agreement in principle. Compl., Motion for Settlement. In comparison, other Covid-

---

[2] Notably, class counsel's award of 33.3% of the fund was largely paid from the additional $4 million allocated for costs and fees.

11

19 tuition reimbursement cases have proceeded at a more moderate pace.  For example, in

<u>Wolfson v. Lafayette College</u>, the Complaint was filed over a year ago and the parties have still

not reached even a settlement in principle, No. 23-4005, Pacer (E.D. Pa.) (Gallagher); in <u>Espejo

et al. v. Cornell University</u>, it took three and half years from the filing of the Complaint for a

final approval hearing to be held , No. 20-467, Pacer (N.D.N.Y.); in <u>Smith et al v. The University

of Pennsylvania</u>, it took almost three years after the Complaint was filed for the litigation to

reach a final approval hearing, No. 20-2086, Pacer (E.D. Pa.) (Savage); and in <u>Pfingsten v.

Carnegie Mellon University</u>, it has been over four years since the Complaint was filed and the

case was only just referred to mediation in August 2024, No. 20-716, Pacer (W.D. Pa.).

Counsels' experience litigating these cases, coupled with the limited discovery and motions

practice, weighs towards a finding of the requested awards' unreasonableness.[3]

      Factor six, the amount of time devoted by class counsel.  <u>Cf Cullen</u>, 197 F.R.D. at 149-

150 (holding that the 3,899.84 hours "class counsel devoted to this case represents a substantial

commitment to this litigation.").  This case reached an early resolution.  Notably, there was no

motion to dismiss filed by Defendant, discovery was limited to that needed for mediation, no

depositions were taken, no class members objected or opted-out, and Defendant did not object to

the Motion for Settlement and to Certify Class (ECF 23), Motion for Attorney Fees, Costs and

Case Contribution Award (ECF 25), or Motion for Settlement (ECF 29).  Through the filing of

this Motion, class counsel expended 205.3 hours on this matter.[4]  In other Covid-19 tuition

---

[3] <u>See Cullen v. Whitman Med. Corp.</u>, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (Brody) finding that "[t]he complexity and duration of the litigation weigh[ed] in favor of granting class counsel's petition" where "litigation continued for over two years[,]" there was "a multitude of discovery problems[,]" and there were "few similar cases for counsel to rely on as precedent."  The "litigation consisted of motions to dismiss, class certification motions, a multitude of discovery motions, many oral arguments and numerous settlement conferences."  In determining that this factor weighed in favor of the fee requests' reasonableness the court explained that "[v]irtually nothing about [the] case was simplistic."

[4] Colella Decl. at 3 (Lynch Carpenter attorneys and staff recorded 114 hours); Alesandro Decl. at 5 (Leeds Brown attorneys and staff recorded 91.3 hours).

reimbursement cases where a 33.3% portion of the fund was awarded in attorneys' fees, class counsel spent 1,616.2 and 3,003 hours, respectively, on the matter. See In Shaffer v. George Washington Univ., WL 3280061 at *3 (D.D.C. May 13, 2024); Espejo, No. 20-467, Pacer (N.D.N.Y). Even in the cases cited by counsel as "directly analogous" to this case, the attorneys' devoted more time than counsel did here. Fees Motion at 10. See Fittipaldi v. Monmouth Univ., No. 20-5526, Pacer (D.N.J.) (over four hundred hours); Martin v. Lindenwood Univ., No. 20-1128, Pacer (E.D. Mo.) (269.9 hours). [5] Additionally, class counsel only seeks reimbursement for $5,175 in mediation fees, attesting to the matter's quick resolution. Colella Decl. at 4.

Factor ten, the existence of innovative settlement terms. The settlement terms in this case are nearly identical to the settlement terms of other Covid-19 tuition reimbursement cases. See Smith, No. 20-2086, Pacer (E.D. Pa.) ("A portion of the Net Settlement Fund will be allocated pro rata to each Settlement Class Member based on the ratio of (a) the total number of Potential Settlement Class Members to (b) the total Net Settlement Fund."); Fittipaldi, No. 20-5526, Pacer (D.N.J.) (under the settlement agreement students received a pro rata share of the fund "based on the total out-of-pocket amount of tuition and fees paid for the Spring 2020 Semester" up to $155.)

Additionally, the Court's skepticism of the fee awards' reasonableness is heightened by the inherent tension between the interests of the class and class counsel. The greater the attorneys' fee award, the less award is left for the class. See Ward., WL 759389 at * 22 (citing Brown v. Rita's Water Ice Franchise Co. LLC, 242 F.Supp.3d 356, 371 (E.D. Pa. 2017) (Savage) and Rule 23 Advisory Committee Note ("[T]he relief actually delivered to the class can be a significant factor in determining the appropriate fee award.")). In other Covid-19 tuition

---

[5] The Court notes that in Engel v. Gannon University, No. 23-244, Pacer (W.D. Pa.) the attorneys' fee was approved where counsel spent 193.2 hours on the matter.

13

reimbursement cases, attorneys' fees of less than 33.3% of the settlement fund have been awarded. In Shaffer, the Court reduced the requested award from what would have been 33.3% of the fund to 20% of the fund. WL 3280061 at *3.

Counsel cites to other Covid-19 tuition reimbursement cases where a fee award of 33.3% of the settlement fund was approved. Not only are these cases not dispositive, but they pose significantly different facts than the matter before the Court. In both Martin, No. 20-1128, Pacer (E.D. Mo.) and Rosado v. Barry University, No. 20-21813 (S.D. Fla.) counsel defended against motions to dismiss. Additionally, in Martin, it took almost two years from when the Complaint was filed for a final approval hearing to be held.

In other class actions involving a common fund, this circuit has concluded that fee awards between 19-45% are reasonable. In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995).[6] The Court finds that given the modest size of the class and fund, the expedited manner in which the case was resolved, the time that counsel devoted to this case compared to other Covid-19 tuition reimbursement cases, and the lack of innovative settlement terms, counsel is entitled to 19% of the fund in attorneys' fees. This circuit has consistently held that 19% of the fund is a reasonable award under the percentage-of-the-recovery method. As this case involved limited discovery and motions practice, no objections or opt-outs from the class, no objections by the defense, and settled within fourteen months, it would not be fair to award counsel here the same percentage of the fund as counsel has been awarded in more litigious, lengthy, and complex Covid-19 tuition reimbursement cases.

---

[6] See also Jackson v. Wells Fargo Bank, N.A., 136 F.Supp.3d 687, 715 (W.D. Pa. 2015) (noting that fee awards between 19% and 45% of the settlement fund are reasonable under the percentage-of-the-recovery method.).

2. **Lodestar Method**

Under the lodestar method attorneys' fees are calculated by multiplying the reasonable number of hours worked by a reasonable billing rate. Cullen, 197 F.R.D. at 150. Multiples between one and four are generally considered reasonable. In re Prudential, 148 F.3d at 341. The Court employs the lodestar method only to confirm its finding, under the percentage-of-recovery method, that the requested attorneys' fee award is unreasonable.

Class counsel expended 205.3 hours on this matter and asks for a lodestar multiplier of 3.07. Under the facts of this case, the Court finds that a lodestar multiplier of 3.07 is unreasonable.

In nearly all the Covid-19 tuition reimbursement cases where a fee award representing 33.3% of the settlement fund was awarded, the lodestar multiplier was significantly less than the 3.07 that counsel asks for in this case. For example, the 33.3% of the settlement fund awarded in Espejo, No. 20-467, Pacer (N.D.N.Y) translated to a negative lodestar multiplier of 0.58 and in Miranda, WL 6443122 at * 7 (S.D. Ohio Oct. 3, 2023) to a negative lodestar multiplier of 0.75. Similarly, attorneys' fees worth 33.3% of the fund were awarded in Smith, No. 20-2086, Pacer (E.D. Pa.), Qureshi et al. v. American University. No. 20-1141, Pacer (D.D.C.), Kincheloe et al. v. University of Chicago, No. 20-3015, Pacer (N.D. Ill.), Ninivaggi, No. 20-1478, Pacer (D. Del.), and Ford v. Rensselaer Polytechnic Institute, WL 98356 at *3 (N.D.N.Y. Jan. 9, 2024) but represented a lodestar multiplier of just 1.34, 1.78, 1.92, 1.06, and 1.18, respectively.

Class counsel cites to other Covid-19 tuition reimbursement cases where a fee award of 33.3% of the settlement fund was approved. However, these cases, when cross-checked with the lodestar method, represent lodestar multipliers less than the 3.07 that counsel requests in this matter. Further, they all involve litigation of a longer duration and heightened complexity than

15

the case at issue. In Fittipaldi, counsel appealed the partial grant of a motion to dismiss and filed two amended complaints, it took over two and half years from when the Complaint was filed until the final approval hearing, and the award represented a lodestar multiplier of 2.3. No. 20-5526, Pacer (D.N.J.). Likewise, in Wright v. Southern New Hampshire University, counsel defended against a motion to dismiss, filed an amended complaint, defended against a motion to dismiss the amended complaint, and the award represented a lodestar multiplier of 2.53. No. 20-609, Pacer, (D.N.H.).[7]

Cross-checking the requested attorneys' fee award under the lodestar method confirms the Court's finding, pursuant to the percentage-of-recovery method, that the award is unreasonable.

3. **Reasonable Award**

The Court does not dispute that attorneys' fees worth 33.3% of the fund have been awarded in numerous Covid-19 tuition reimbursement cases. However, over half of the Gunter and Prudential factors point to the unreasonableness of counsels' requested award in this matter. Cross-checking the award against the lodestar method only confirms the awards' unreasonableness. In many Covid-19 tuition reimbursement cases where 33.3% of the settlement fund was awarded in attorneys' fees, the lodestar multiplier was between 1-2. Importantly, this case, compared to other Covid-19 tuition reimbursement cases, was less contentious, resolved in a shorter duration, and involved less motions practice and discovery. It would not be reasonable to award class counsel in this case a greater award in proportion to their actual fees than counsel have been awarded in more protracted and complex litigations, particularly given that "every

---

[7] The Court notes that in Engel, a court awarded 33.3% of the settlement fund in attorneys' fees in a case that took fourteen months from when the Complaint was filed to when a final approval hearing was held. No. 12-244, Pacer (W.D. Pa.)

16

dollar that goes to counsel is one less dollar available for distribution to the class." Ward, WL 759389 at *22.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's unopposed Motion for Settlement (ECF 29) is granted and Plaintiff's unopposed Motion for Attorney Fees, Costs, and Case Contribution Award to Settlement Class Representative (ECF 25) is granted in part and denied in part.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 23\23-3181 Cantave v St Joes\23-3181 Memorandum Opinion Approving Class Settlement.docx